

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

Gerald C. Mann
~~XXXXXXXXXX~~
ATTORNEY GENERAL

Honorable R. A. Fuchs, Chairman
Sub-committee of the State Affairs Committee
House of Representatives
Austin, Texas

Dear Sir:

Opinion No. O-3518
Re: Constitutionality of Committee substitute for H.B. 189 providing for the creation of the Texas Board of Chiropractic Examiners and licensing by said Board of practitioners of Chiropractic.

  Pursuant to your request of May 8, 1941, we have carefully considered, with reference to its constitutionality, the Committee substitute for House Bill 189, copy of which is attached hereto. This Bill provides for the creation of the Texas Board of Chiropractic Examiners which shall license all Chiropractors in this State. The general purpose of the Bill is to create for the practice of Chiropractic a system of regulation similar to that now provided by statute for medicine, nursing, pharmacy, dentistry, optometry and chiropody.

  The practice of Chiropractic under present statutes comes within the definition of the practice of medicine as contained in Article 741, Penal Code of Texas, 1925, which reads:

  "Any person shall be regarded as practicing medicine within the meaning of this chapter:

  "1. Who shall publicly profess to be a physician or surgeon and shall treat or offer to treat any disease or disorder, mental or physical, or any physical deformity or injury, by any system or method, or to effect cures thereof.

  "2. Who shall treat or offer to treat any disease or disorder, mental or physical, or any physical deformity or injury, by any system or method, or to effect cures thereof and charge therefor, directly or indirectly, money or other compensation."

  Our courts have repeatedly held that persons professing to practice Chiropractic must be licensed under the Medical

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Practice Act or be subject to prosecution for practicing medicine without a license. Park v. Coulson, 139 S. W. (2d) 667; Perry v. State, 134 S. W. (2d) 283; Hawkins v. State, 125 S. W. (2d) 580; Hoy v. State, 115 S. W. (2d) 629; Ehrke v. State, 115 S. W. (2d) 631.

The question which presents itself for our determination is whether the Legislature may constitutionally classify the practice of Chiropractic as a separate category from the practice of medicine and prescribe different prerequisites therefor. The legal question is somewhat analogous to that presented upon the enactment of the Optometry Statute, Chapter 10 of Title 71, Articles 4552-4566, Revised Civil Statutes, 1925, which was before the Court of Criminal Appeals of Texas in Baker v. State, 240 S. W. 924, 22 A. L. R. 1163. In that case the court in sustaining a conviction of Baker, an Optometrist, for practicing medicine without a license declared:

"Recalling the solicitude which the lawmaking department of the government of this state has displayed for the protection of the public health, the breadth of the language chosen in which to define the practice of medicine, and its failure to exempt the optometrist therefrom, bearing in mind the often-repeated declaration of this court in construing the Medical Practice Act, that it dealt not with the remedial agent employed, but embraced those treating any disorder or physical deformity for pay, we cannot persuade ourselves that those practicing optometry, as described by the evidence, are not embraced within the terms of the Medical Practice Act. ***.

"* * *. The power of the legislature to put the optometrists in a separate class, as it has done dentists and nurses, is without question. The expediency of doing so is a matter of policy with which the courts are not concerned." (Emphasis ours).

After the above opinion was written, but before the hearing on the motion for rehearing, the Legislature enacted the Optometry Law referred to above. Thereupon the court reversed the judgment of conviction upon the ground that under the Optometry Statute the acts of the defendant no longer constituted the practice of medicine within the meaning of the Medical Practice Act. In its opinion on rehearing the court also considered the application of Article 16, Section 31 of the Texas Constitution, which reads:

"The Legislature may pass laws prescribing the qualifications of practitioners of medicine in this State, and to punish persons for malpractice, but no preference shall ever be given by law to any schools of medicine."

Of this provision, the court said:

"While the Constitution forbids any legis-
lation showing preference for any school of
medicine, it does not forbid legislative defini-
tion of what does, and also what does not con-
stitute the practice of medicine."

In Robertus v. State, 45 S. W. (2d) 595, an attack
was made on the constitutionality of the Medical Practice Act as
being discriminatory because of the exemption of Optometrists.
The Court of Criminal Appeals, after discussing the Baker case,
declared, at p. 598:

"The Legislature would have had a right
originally to exempt optometrists, as that term
is defined, from the penalties of the Medical
Practice Act the same as it did dentists, nurses
and masseurs."

In Ex parte Collins, 121 S. W. 501, the Court of Crim-
inal Appeals sustained a conviction of an Osteopath for violating
the Medical Practice Act in that he was not licensed thereunder,
and in its opinion the court said:

"* * * there is no limitation upon the power
of the Legislature in said provision of the Con-
stitution (Art. 16, Sec. 31, supra) which inhibits
the Legislature of this state under its police
power to prevent any one practicing any species
or character of remedy to cure any real or sup-
posed ill that the body has or is subject to
for pay."

The case of Johnson v. State by the Dallas Court of
Civil Appeals, 267 S. W. 1057, (writ of error refused) is pecu-
liarly pertinent to the question under consideration. In sus-
taining an injunction restraining a Chiropractor from unlawful-
ly practicing medicine, the court said, at p. 1060:

"The Legislature did not, by its enactment
of the Medical Practice Act forbid the practice
of any recognized school or system of healing
* * *. In the interest of the public health
and the genral welfare of the people, the Leg-
islature is authorized to prescribe such regula-
tions to be conformed by persons seeking to enter
the practice of medicine as in its judgment will
secure or tend to secure the people against the
consequences of ignorance and incapacity, as
well as of deception and fraud, and this without
regard to any special system of practice or any
established school of medicine."

"* * *.

"These conditions (of the Medical Practice
Act) apply to all persons alike; they do not
prescribe any method to be employed in healing
disease, or any system of practice to be adopted
by the practitioner. If he possesses the qualifi-
cations prescribed by the statutes and is awarded
a certificate to practice medicine, he is just as
free to adopt the system of the chiropractor as
he is to adopt the system of the regular physician.
The fact that it requires a broader education than
is given by the chiropractic college to meet these
conditions cannot be urged as a discrimination
against such schools of medicine. It is easily
within the power of the chiropractor to conform
to the prescribed conditions. This record shows
that all the subjects prescribed by this act for
examination are taught by the chiropractic schools
except those of surgery and medical jurisprudence;
so that it may be said that these schools
give substantial recognition to the essential
qualifications prescribed by these statutes."

Vaughan, J., dissenting in the Johnson case, at p.
1063, declared:

"* * * it is the opinion of the writer
that courts should take judicial cognizance that
chiropractic is a system of healing entirely
separate and distinct from the practice of reg-
ular medicine, just as judicial cognizance of
the fact that the practice of dentistry is dif-
ferent from the practice of regular medicine
and requires in a large measure, a different
education."

While no Texas court has held in accordance with Judge
Vaughan's views as quoted above in his dissenting opinion in the
Johnson case, that a court may properly "take judicial cognizance
that Chiropractic is a system of healing entirely separate and
distinct from the practice of regular medicine" under existing
statutes, all of the authorities, however, indicate that the
Legislature may, if it deems proper, recognize such a distinction
and give statutory sanction thereto. As illustrated by the Baker
case, supra, Optometry was construed to be a science embraced
within the "practice of medicine" as defined by the Medical Prac-
tice Act, until the Legislature, by express statute, took cogniz-
ance of Optometry as a separate subdivision thereof, and prescrib-
ed special qualifications and regulation for the practice of
Optometry, thereby excluding it from the provisions of the Medi-
cal Practice Act. By a similar process, the Legislature set up
qualifications and regulations differing from those which apply
to the general practice of medicine, for Chiropodists when it

enacted the Chiropody Statute, in 1923, Chapter 11, Title 71, Articles 4568-4575, Revised Civil Statutes, 1925.

The foregoing authorities indicate, we believe, that there is no constitutional inhibition which will prevent the Legislature from further subdividing the field of medicine in its broadest sense into an infinite number of limited categories and providing separate qualifications and regulations for the practice of each. The constitutionality of each such regulatory Act, if it be reasonable, may be sustained upon the theory that it is enacted in furtherance of the protection of the public health. We are aware of no provision of the State or Federal Constitutions which would be violated by the Committee substitute for House Bill 189 which you have submitted to us. If enacted, it would exempt Chiropractors from the Medical Practice Act, and place them under the supervision and regulation of the "Texas Board of Chiropractic Examiners."

Yours very truly

ATTORNEY GENERAL OF TEXAS

By(Signed) Walter R. Keal
Assistant

WRK:RS

ENCLOSURE

APPROVED MAY 20, 1941
Grover Sellers
First Assistant
ATTORNEY GENERAL

APPROVED - Opinion Committee

BWB - Chairman